UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

SUSAN HALE,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:15-cv-360

Magistrate Judge Michael J. Newman
(Consent Case)

---

**DECISION AND ENTRY: (1) REVERSING THE ALJ'S NON-DISABILITY FINDING AS UNSUPPORTED BY SUBSTANTIAL EVIDENCE; (2) REMANDING THIS CASE TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) TERMINATING THIS CASE ON THE COURT'S DOCKET**

---

This Social Security disability benefits appeal is before the undersigned for disposition based upon the parties' full consent. Doc. 7. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[1] This case is before the Court on Plaintiff's Statement of Errors (doc. 8), the Commissioner's memorandum in opposition (doc. 10), Plaintiff's reply (doc. 11), the administrative record (doc. 5, 6),[2] and the record as a whole.

---

[1] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Decision and Entry to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

I.

A.     **Procedural History**

Plaintiff filed for DIB and SSI alleging a disability onset date of October 17, 2006. PageID 221-31.  Plaintiff suffers from a number of impairments including, among others, chronic back pain, obesity, diabetes, and depression.  PageID 1027.

After initial denial of her claims, Plaintiff received a hearing before ALJ Maria Hodges on October 12, 2011.  PageID 66-107.  The ALJ issued a written decision on October 26, 2011 finding Plaintiff not disabled.  PageID 40-56.  Plaintiff subsequently appealed ALJ Hodges's decision and the undersigned reversed her non-disability finding as unsupported by substantial evidence, and remanded the case for further proceedings.  *Hale v. Comm'r of Soc. Sec.*, No. 3:13-CV-195, 2014 WL 7176476, at *1-7 (S.D. Ohio Sept. 26, 2014).

On remand, Plaintiff received a hearing before ALJ Elizabeth Motta on March 23, 2015. PageID 1059-92.  ALJ Motta issued a decision on July 31, 2015 finding Plaintiff not disabled. PageID 1023-48.  Specifically, the ALJ found:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since October 17, 2006, the alleged disability onset date (20 CFR 404.1571, et seq., and 416.971, et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, diabetes mellitus with nephropathy, depressive disorder, personality disorder with dependent features, borderline intellectual functioning versus learning disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity ["RFC"] to perform light work[3] as defined at 20 CFR 404.1567(b) and 416.967(b), including lifting and carrying up to 20 pounds occasionally and ten pounds frequently, subject to some additional limitations. She can stand and walk a combined total of four hours during an eight-hour workday. Postural activities (i.e., climbing stairs and ramps, balancing, stooping, kneeling, crouching, crawling) can be done no more than occasionally. The claimant cannot climb ladders, ropes or scaffolds. She should not be exposed to hazards (e.g., unprotected heights or moving machinery). The claimant is limited to performing simple repetitive tasks; low stress work (i.e., no fixed production quotas or fast pace and only routine work with few changes in work setting). She should have no more than occasional contact with the public, co-workers and supervisors.

6. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 22, 1967. At age 47 she is classified as a "younger individual" for Social Security purposes (20 CFR 404.1563 and 416.963).

8. The claimant has a high-school education (20 CFR 404.1564 and 416.964).

9. The claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant was not "disabled," as defined in the Social Security Act, from October 17, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 1023-48.

Plaintiff did not seek Appeals Council review of ALJ Motta's decision. *See* 20 C.F.R. § 404.984(d) (in a case remanded by a Federal Court, "[i]f no exceptions are filed and the

---

[3] The Social Security Administration ("SSA") classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. § 404.1567(b). An individual who can perform light work is presumed to also be able to perform sedentary work. *Id*. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id*. § 404.1567(a).

Appeals Council does not assume jurisdiction of [the] case, the decision of the [ALJ] becomes the final decision of the Commissioner after remand"). Plaintiff now timely appeals ALJ Motta's March 23, 2015 decision. *See id*; *see also* 20 C.F.R. § 404.984(c).

### B. Evidence of Record

The evidence of record is adequately summarized in the ALJ's decision (PageID 1027-45), Plaintiff's Statement of Errors (doc. 8), the Commissioner's memorandum in opposition (doc. 10), and Plaintiff's reply (doc. 11). The undersigned incorporates all of the foregoing and sets forth the facts relevant to this Decision herein.

### II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the

Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff argues that the ALJ erred by improperly: (1) weighing the opinions of primary care physician James W. Thompson, D.O. and her treating psychiatrist Douglas Lehrer, M.D.; (2) explaining the weight accorded to non-treating medical sources; (3) assessing the extent of her daily activities; and (4) relying significantly on her alleged noncompliance with treatment recommendations in assessing her credibility.  The undersigned finds error in the ALJ's weighing of medical source opinions and, therefore, does not address the merits of each of Plaintiff's alleged errors.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013).  In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers. *Id*.  Treaters are entitled to the greatest deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2).

A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013).  Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r*

*of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).[4]

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9. Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. Put simply, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)). In the absence of a controlling treating source opinion, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related to the individual's impairment(s). *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

### A. Dr. Lehrer[5]

Before addressing the merits of the ALJ's assessment of Dr. Lehrer's opinion, the Court

---

[4] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-cv-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id*.

[5] The Court notes that Dr. Lehrer's opinion was co-signed by Plaintiff's treating licensed professional counselor Jacqueline Rust, L.P.C. PageID 973. In addition to "medical source opinions," opinions from "other sources" can be used to establish the severity of a claimant's impairment and establish how impairments affect a claimant's ability to work. 20 C.F.R. § 404.1513(d). "Other sources" include medical sources such as nurse practitioners or counselors who do not qualify as "acceptable medical sources" under the regulations. *Id*. Although opinions from "other medical sources" who have treated a claimant are not entitled to controlling weight like those of a treating physician or psychologist, "other source" opinions may be entitled to more weight than "acceptable medical sources" under the unique circumstances of a given case. SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006) (emphasis added). In fact, the opinions of "other sources" may even be given more weight than a treating physician if the "other sources" have seen the claimant more frequently than the "acceptable sources" and have provided better explanations for their opinions. *Id*. Here, Plaintiff does not expressly reference Counselor Rust in her Statement of Errors. Thus, for purposes of this appeal, the Court refers to the opinion as that of Dr. Lehrer. Nevertheless, the Court finds that the findings herein apply equally to Counselor Rust's opinion.

notes that in setting forth Plaintiff's RFC in this case, ALJ Motta cited no opinion from any medical source concerning limitations arising from Plaintiff's mental impairments. *See* PageID 1043. Instead, the ALJ's entire evaluation of opinion evidence related to Plaintiff's mental impairments was confined to the analysis at Step Two when determining whether such impairments were severe or non-severe. *See* 20 C.F.R. §§ 404.1505, 404.1508, 404.1520(a)(4)(ii) and 404.1527(a)(1). "[A] Step Two analysis is distinct from the ALJ's obligation to consider [at Step Four] the impact of Plaintiff's [severe and] non-severe impairments . . . in assessing Plaintiff's RFC." *Singleton v. Comm'r of Soc. Sec.*, 137 F. Supp. 3d 1028, 1034 (S.D. Ohio 2015) (citation omitted); *see also Garcia v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 805, 811 (S.D. Ohio 2015).

"While the ALJ must consider all of the relevant evidence in determining a claimant's RFC, the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007). In other words, "[t]he [RFC] opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making [RFC] finding, the ALJ may not interpret raw medical data in functional terms.'" *Isaacs v. Astrue*, No. 1:08-CV-00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin v. Commissioner*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)). Here, absent citation to any medical source's RFC opinion regarding Plaintiff's mental impairments, the undersigned finds the ALJ's RFC determination unsupported by substantial evidence.

Assuming the ALJ's analysis of mental health opinions at Step Two can be sufficiently attributed to the RFC determination at Step Four, the undersigned finds that the ALJ failed to appropriately weigh the opinion of treating psychiatrist Dr. Lehrer, who opined in April 2011,

that Plaintiff is "markedly limited"[6] in numerous areas of mental functioning and that, as a result of her impairments, Plaintiff would be absent from work more than three times per month. PageID 970-73. The ALJ, in concluding that such opinion was not entitled to controlling weight, found that it was "neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record" and, instead, "could only be based on uncritical acceptance of the claimant's subjective complaints." PageID 1033.

The undersigned concludes that the ALJ's statement regarding the lack of clinical findings fails to satisfy the requirements of the treating physician analysis set forth in 20 C.F.R. § 404.1527(c). *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). The conclusory statement -- that Dr. Lehrer's opinion is not "well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record[,]" *see* PageID 1033 -- "is ambiguous" because "[o]ne cannot determine whether the purported problem is that the opinions rely on findings that are not objective (*i.e.*, that are not the result of medically acceptable clinical and laboratory diagnostic techniques, *see* 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions." *Gayheart*, 710 F.3d at 377.

Further, insofar as the ALJ may have concluded that the record was devoid of any clinical findings,[7] such conclusion is unsupported by substantial evidence. In fact, Plaintiff's treatment records reflect that, upon examination, she consistently appeared tired, depressed, anxious, and

---

[6] "Moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), whereas "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C), *et seq*. *See Holland v. Comm'r of Soc. Sec.*, No. 3:14-CV-246, 2015 WL 6891032, at *4 (S.D. Ohio July 6, 2015).

[7] With regard to clinical findings, the Sixth Circuit has "acknowledged the difficulty inherent in proving psychological disabilities." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 526 (6th Cir. 2014). "'[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.'" *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).

sometimes dysthymic, worried and withdrawn.  PageID 661, 674, 679, 681, 683, 689, 691, 697, 699, 701, 705, 717, 861, 863, 867, 869, 871, 877, 879, 881, 885, 950, 957, 960, 962, 964, 966, 968.  Insofar as the ALJ concluded that such clinical findings do not support Dr. Lehrer's opinion, the ALJ sets forth no specific or meaningful explanation in that regard.

In light of these clinical findings, the ALJ's conclusions -- that Dr. Lehrer's opinion must be (1) based on "uncritical acceptance of [Plaintiff's] subjective complaints[,]" and (2) "entirely speculative and lacking any logical foundation in the medical record" -- are also unsupported by the record.  *See supra*; *see also* PageID 971 (noting that Plaintiff not only reports "symptoms[,]" but also "displays symptoms of depression that include social withdrawal, lack of motivation, fatigue, over eating, remembering [and] concentrating").

With regard to the purportedly inconsistent "other substantial evidence in the case record" undermining Dr. Lehrer's opinion, it is not entirely clear what evidence the ALJ is referencing in this regard.  *See* PageID 1033.  Insofar as the ALJ relied on the opinions of "[o]ther mental health professionals" who purportedly "presented much less pessimistic assessments of the claimant's mental functioning capabilities," *see* PageID 1032, such reliance -- in declining controlling weight to Dr. Lehrer's opinion -- is error.  *See Gayheart*, 710 F.3d at 377 (holding that "the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors" because "[o]therwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion").

Insofar as the inconsistent substantial evidence is a medical record wherein Plaintiff represented working 129 hours per month (an average of 30 hours per week) at one point, the ALJ failed to acknowledge that such work was not on a full-time basis, and that the same note reflects Plaintiff's intent to quit such part-time job because she "hurt," the job increased her

10

anxiety, and because her anxiety medication "knocks her out." PageID 1662-63. Accordingly, such evidence does not suggest Plaintiff's ability to work "on a *sustained basis*, which is how functional limitations of mental impairments are to be assessed." *Gayheart*, 710 F.3d at 377 (emphasis in original); *see also Lust v. Comm'r of Soc. Sec.*, No. CIV.A. 10-261, 2010 WL 2773205, at *2 (W.D. Pa. July 13, 2010) (stating that "[f]or purposes of Social Security disability, the ability to perform competitive work on a sustained basis means the ability to work on a regular and continuing basis, i.e., 8 hours a day for 5 days a week or an equivalent schedule").

Finally, the only other portion of the record referenced by the ALJ in rejecting Dr. Lehrer's opinion was Plaintiff's "own statements made to other mental health professionals[;]" namely, unidentified statements made to Nancy Schmidtgoessling, Ph.D. and Gordon Harris, Ph.D. PageID 1033. Insofar as the ALJ may be referencing Plaintiff's daily activities as described by Drs. Schmidtgoessling and Harris, the undersigned sees little in such descriptions of Plaintiff's daily activities suggesting that Plaintiff is able to work "on a *sustained basis*[.]" *Gayheart*, 710 F.3d at 377 (emphasis in original).

Based upon all of the foregoing, the ALJ's analysis regarding the weight accorded Dr. Lehrer's opinion is unsupported by substantial evidence. Reversal is mandated.

### B. Dr. Thompson

With regard to Plaintiff's physical limitations in this case, the record contains opinions from two treating physicians; namely, Dr. Thompson and Douglas Ross, D.O. *See* PageID 607-09, 998. On appeal, Plaintiff challenges the ALJ's assessment of Dr. Thompson's opinion and does not challenge the ALJ's assessment of Dr. Ross's opinion. PageID 1040.

In June 2011, Dr. Thompson concluded that, because of her impairments, Plaintiff was limited to standing 15 minutes at a time; sitting for 30 minutes at a time; lifting 10 pounds

11

occasionally and 5 pounds frequently; no stooping; and working a total of 1 hour per day. PageID 998. In weighing Dr. Thompson's opinion, ALJ Motta found that such opinion could not "be given controlling or deferential weight." PageID 1041. In that regard, the ALJ found Dr. Thompson's "conclusions are *entirely* unsupported by medically acceptable clinical and laboratory diagnostic techniques"[8] and have "*no* logical medically determinable basis in the medical record." *Id.* (emphasis added).

Contrary to the ALJ's conclusion, however, there are numerous clinical and imaging findings of record that lend support to Dr. Thompson's opinion. *See* PageID 457, 479, 493, 516, 613, 618, 628, 642 (noting "[m]arked tenderness in the right lumbar parapinal area, moderate tenderness in the lumbar facet joints, moderate tenderness in the right S1 joint . . . [and] pain elicited with active lumbar flexion"); 637-38 (noting tenderness at L4, L5 and sacrum); 988 (noting MRI findings of "[s]table shallow central disc protrusion at L4-L5" and "[f]acet arthropathy at L4-L5 and L5-S1" at MRI); 989 (noting MRI findings of "[m]ild degenerative changes of the right hip and pubic symphysis"); 1015-17 (noting "wide-based" gait, tenderness in the right S1 joint, and muscle spasm in the bilateral lumbar spine); 1341 (noting tenderness); 1348, 1353, 1357, 1361, 1366, 1370, 1375, 1379, 1383, 1387, 1393, 1400-01, 1405-06, 1411, 1416-17, 1419-20, 1423-24, 1429, 1432-33, 1436, 1440, 1443, 1446, 1449-50 (noting morbid obesity,[9] tenderness throughout the lumbar spine; "[p]ain with [p]alpation" of the "lumbar facet, left S1 joint, and right SI joint"; decreased range of motion in the hips, knees and left ankle; tenderness and pain with motion in the neck, and limited ambulation); 1493 (noting morbid

---

[8] Notably, the Court in its previous decision in 2014 concluded otherwise, noting that the record is "replete with clinical signs and findings supporting the existence of back pain including, but not limited to, marked to moderate tenderness in the lumbar spine area, reduced range of motion, antalgic gait, spinal tenderness, swelling in Plaintiff's legs, wide-based gait, tenderness to palpitation, muscle spasm, and pain to pressure of Plaintiff's spine." *Hale*, 2014 WL 7176476, at *5.

[9] Obesity itself "can cause limitation of function." SSR 01-1P, 2002 WL 34686281, at *6 (Sept. 12, 2002). Further, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.*

12

obesity, antalgic gait, tenderness in the thoracic and lumbar spine, pain to palpation of the lower lumbar spine, and S1 joint tenderness); 1496, 1500, 1503 (noting paint to palpation of the thoracic and lumbar spine). Thus, the ALJ's conclusion -- that Dr. Thompson's opinion is "*entirely*" unsupported by clinical and objective findings, and has "*no* logical medically determinable basis in the medical record" -- is unsupported by substantial evidence. PageID 1041 (emphasis added).

The Court also notes that, in rejecting Dr. Thompson's opinion, the ALJ instead gave "significant weight" to the opinions of four non-examining, record-reviewing physicians: (1) Eli Perencevich, D.O., who offered an assessment on August 21, 2007; (2) Gerald Klyop, M.D., who offered an assessment on August 11, 2009; (3) Diane Manos, M.D., who offered an opinion on June 2, 2010; and (4) Leon Hughes, M.D., who offered an assessment on October 28, 2010. PageID 409-16, 447-54, 805-12, 888, 1040. In giving these opinions "substantial weight," the ALJ found that these opinions are "not inconsistent with any compelling evidence in the case record and are found to represent a credible estimation of the claimant's actual basic functional capabilities." PageID 1042. Unfortunately, this conclusory assessment of the record-reviewers' opinions is not significantly different than the previous ALJ's analysis -- a deficient analysis that the Court found amounted to reversible error. *See Hale*, 2014 WL 7176476, at \*6.

Based upon the foregoing, the undersigned concludes that the ALJ's analysis of the weight accorded the opinions of Drs. Thompson, Perencvich, Klyop, Manos and Hughes are unsupported by substantial evidence. Reversal is also appropriate on this basis.

## IV.

When, as here, the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to reverse and remand the matter for rehearing or to reverse and order the award of benefits. The Court has authority to affirm, modify or reverse the

13

Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

While the Court acknowledges Plaintiff's concern that this case was previously remanded, *see Hale*, 2014 WL 7176476, at *6-7, and that Plaintiff's application for benefits has been pending for over seven years, the Court cannot conclude that factual issues have been resolved such that the Court can award benefits. Thus, reluctantly, the Court finds that a remand for further proceedings is necessary. On remand, it may be helpful for further opinion evidence to be collected and considered by the ALJ regarding Plaintiff's physical and mental impairments and the limitations arising from those impairments, singly and in combination. Further, on remand, all medical source opinions, including any new medical source opinions, must be weighed anew in accordance with the regulations, with care to ensure that all opinions be scrutinized equally. *See Gayheart*, 710 F.3d at 379.

## V.

For the foregoing reasons, **IT IS ORDERED THAT**: (1) the Commissioner's non-disability finding is unsupported by substantial evidence, and **REVERSED**; (2) this matter is **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and (3) this case is **TERMINATED** on the docket.

**IT IS SO ORDERED.**

Date:   March 30, 2017                             s/ Michael J. Newman
                                                                             Michael J. Newman
                                                                             United States Magistrate Judge